■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DENNIS RUDDY, Appellant. [818 NYS2d 271]—

Appeal by the defendant from an order of the County Court, Westchester County (Alessandro, J.), entered June 24, 2004, which, after a hearing pursuant to Correction Law article 6-C, designated him a level two sex offender.

Ordered that the order is reversed, on the law, without costs or disbursements, and the defendant is classified as a level one sex offender.

The defendant contends that the County Court improperly assessed him 10 points for his living situation merely because it found his living situation to be uncertain. We agree.

Under risk factor 15 of the risk assessment instrument (*see* Correction Law article 6-C, Sex Offender Registration Act) a court, inter alia, examines a defendant's living situation and can assess the defendant 10 points if it finds his or her living situation to be inappropriate. The Risk Assessment Guidelines and Commentary define, as an example of an inappropriate living situation, a child molester living "near an elementary school playground" (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary, at 17 [1997 ed]).

The evidence presented at the hearing showed that, at the most, the defendant's living situation was uncertain in that he may have been homeless, or was living in a "sober house" in Long Island. This was insufficient as a matter of law to meet the burden of showing, by clear and convincing evidence, that the defendant's living situation was inappropriate (*see* Correction Law § 168-n [3]; *People v Hampton*, 300 AD2d 641 [2002]). Accordingly, the County Court erred in assessing the defendant 10 points under risk factor 15. Subtracting those 10 points from the total of the 80 points assessed by the County Court against the defendant leaves the defendant with a total of 70 points, rendering him a level one sex offender. Florio, J.P., Crane and Mastro, JJ., concur.

Rivera, J. (dissenting and voting to affirm the order): The issue presented is whether the defendant was properly assessed 10 points under risk factor 15 "Living or employment situation" as contained in the Sex Offender Registration Act (hereinafter SORA) risk assessment instrument. Contrary to my colleagues' determination, the County Court properly assessed these 10 points and, accordingly, the defendant was correctly designated a level two sex offender pursuant to Correction Law article 6-C.

"In establishing the appropriate risk level classification under SORA, the prosecution bears 'the burden of proving the facts supporting the determinations sought by clear and convincing evidence' " (*People v Hegazy*, 25 AD3d 675, 676 [2006], quoting

Correction Law § 168-n [3]). In making the relevant determination of the risk level classification, "the court shall review any victim's statement and any relevant materials and evidence submitted by the sex offender and the district attorney and the recommendation and any materials submitted by the board, and may consider reliable hearsay evidence submitted by either party" (Correction Law § 168-n [3]).

In the case at bar, the People presented clear and convincing evidence to support a risk level two classification in the form of a risk assessment instrument and the defendant's presentence report (*see People v Burgess*, 6 AD3d 686 [2004]; *People v Smith*, 5 AD3d 752 [2004]; *People v Moore*, 1 AD3d 421 [2003]). Specifically, in support of its claim that the defendant's living situation was "inappropriate," the People properly relied upon statements contained in the presentence report that the defendant was "currently homeless." The presentence report stated that the defendant's last known address was a "sober house" in Long Island. Further, the defendant advised the Probation Officer that he did not know if his room at a "sober house" had been "rented." The defendant also stated to the Probation Officer that if he could not go to the "sober house" location after his release from incarceration, he would "go to a shelter and find housing." The presentence report indicated that the defendant's "housing situation would need to be approved by the supervising agency in order to mitigate the access to potential victims."

At the hearing, the defendant's attorney conceded that "[i]t certainly makes it difficult to tell the police where you're living if you don't have a place to live." However, the defendant's attorney alleged that the defendant was residing at the "sober house." The defendant submitted a copy of a Social Security check, addressed to him at the "sober house" address. Significantly, this check was dated and mailed while the defendant was still incarcerated. Thus, this check did not establish that the defendant was living at the "sober house" at the time of the hearing. The defendant himself did not testify that he was living at the "sober house."

As stated in the Risk Assessment Guidelines and Commentary, "[m]any sex offenders are opportunistic criminals whose likelihood of reoffending increases when their release environment gives them access to victims or a reduced probability of detection" (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary, at 17 [1997 ed]). As an example, the commentary illustrates that if a child molester were to live near an elementary school playground, his or her living environ-

ment would be deemed "inappropriate" (id.). In order to properly determine if a sex offender's living environment will give him or her access to victims or result in a reduced probability of detection, knowledge of the sex offender's living situation is essential. The designated law enforcement agencies need to know where such sex offender will reside upon his release from prison. Absent this knowledge, the purpose of the statute, namely, to " 'protect[ ] vulnerable populations and in some instances the public, from potential harm' " (People v Wroten, 286 AD2d 189, 197 [2001], quoting L 1995, ch 192 § 1), would be defeated and the statute itself rendered meaningless.

The County Court's well-reasoned determination should not be disturbed by this Court. In this regard, the County Court was entitled to rely on the clear and convincing evidence submitted by the People regarding the defendant's inappropriate living situation and reject the unsubstantiated information provided by the defendant's attorney. The defendant's inappropriate living situation, coupled with his history of alcohol and drug abuse, various mental health problems, noncompliance with treatment, a complete lack of any stable personal, social, and employment situation, and his refusal to accept responsibility for the sexual abuse while concomitantly blaming his nine-year-old victim, poses a risk of reoffense and harm therefrom. Accordingly, I would affirm.